**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**NICHOLAS ROTOLO,**

                        **Plaintiff,**                      **6:12-CV-618 (NAM)**

    **vs.**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**APPEARANCES:**

Wayne A. Smith, Jr., Esq.
Smith Hoke PLLC
Albany, New York 12211
For Plaintiff

Hon. Richard S. Hartunian, United States Attorney
Elizabeth Rothstein, Esq., Special Assistant United States Attorney
Social Security Administration
Office of Regional General Counsel, Region II
26 Federal Plaza - Room 3904
New York, New York 10278

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiff Nicholas Rotolo filed this action pursuant to 42 U.S.C. §§ 405(g) asks the Court to reverse the Commissioner's decision to deny his application for disability insurance benefits. Presently before the Court are the parties' cross-motions for judgment on the pleadings. Dkt. Nos. 16, 17, 21, 27.

### THE ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for disability benefits, the claimant must demonstrate that he was disabled on the date he was last insured for benefits. *See Arnone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir. 1989). Here, the Commissioner determined that plaintiff was last insured for benefits on December 31, 2008, and he has not challenged that determination.

There is a five-step process for evaluating disability claims:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him per se disabled.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (citations and alterations omitted).

Using the five-step evaluation process, Administrative Law Judge ("ALJ") Elizabeth Koenneke issued a decision finding that plaintiff was not disabled. The ALJ found at step one, that plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of October 3, 2008, through his date last insured of December 31, 2008." Administrative Transcript 10 ("T.10"). At step two, the ALJ found that plaintiff suffered from the following severe impairment: "degenerative disc disease in the lumbar spine". T.11. At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that

2

meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." T.24.

At step four, the ALJ found that "through the date last insured [December 31, 2008], the claimant had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b)." T.12. In making this finding, the ALJ acknowledged that there were "no assessments of the claimant's physical limitations in the record concerning the period at issue, either prepared for the Administration by its medical consultants and reviewers or by persons treating the claimant." T.12-13. She considered "obtaining medical expert opinion regarding the claimant's physical residual functional capacity during the period under review" but decided against it because there were "no medical records in the evidence [regarding the time period at issue, October 3, 2008 to December 31, 2008] that could be submitted to a medical expert to form a basis for any expert opinion." T. 13. The ALJ therefore relied on plaintiff's work history:

> In 1996, the claimant was permitted to return to work by an orthopedist on a full duty basis. He was using a forklift for the very heavy lifting required back then and likely was doing work requiring medium exertion. The claimant did not seek treatment for his back until 2010 complaining of back pain on one year's duration, well after the date last insured, and treatment records in evidence during the actual period under review do not contain any complaints regarding the back . . . . Relying on this information, the undersigned concludes that the claimant remained able to engage in work requiring at least light exertion through the date last insured.

T.12-13. The ALJ also referred to plaintiff's work activity in 2008, which "included casket making, work requiring medium exertion according to his testimony." T.13.

Before proceeding to step five, the ALJ noted that plaintiff stated at the hearing that "he wanted to allege that he became disabled in 1989". T.14. The ALJ reviewed the evidence in the record, which included evidence from 1996, but determined that there was no basis for finding that plaintiff was disabled prior to October 3, 2008, the disability onset date he alleged in his

3

application for benefits. T.14. The ALJ explained that the record showed that plaintiff "had many years of substantial gainful activity . . . including work in 2010 that required at least light exertion." T.14. She further noted that plaintiff, "[b]y his own admission . . . could perform work requiring light exertion in 2003 [when he worked for the State of New York] and the record does not show any factors supporting his allegation of a worsening back condition . . . ." T.14.

At step five, the ALJ found that while plaintiff could not perform his past relevant work as a welder, he could perform a full range of light work. T.14. After considering plaintiff's "age, education, and work experience" and consulting the Medical-Vocational Guidelines, the ALJ concluded that plaintiff "was not under a disability . . . at any time from October 3, 2008, the alleged onset date, through December 31, 2008, the date last insured". T.15.

## DISCUSSION

### New Evidence

Plaintiff asks the Court to remand the matter for consideration of three new documents: (1) a report dated June 6, 2012, regarding an MRI of plaintiff's spine; (2) a letter dated October 11, 2012 from his treating orthopedist, Daniel G. DiChristina, M.D.; and (3) a "Medical Source Statement" dated November 14, 2012 from Michele B. Scott, a nurse practitioner, and Martin A. Schaeffer, M.D., plaintiff's pain management physician. Plaintiff claims these documents are new and material evidence relating to the time period at issue.

Under sentence six of 42 U.S.C. § 405(6), a court may order the Commissioner to consider additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in [the] prior proceeding[.]" 42 U.S.C. § 405(g); *see Vigiletta v. Metropolitan Life Ins. Co.*, 454 F.3d 378, 379

4

(2d Cir. 2006). Section 405(g) thus requires a showing "that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1998) (citations and quotation marks omitted). In addition, "[t]he concept of materiality requires a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Id*.

## 2012 MRI

On June 5, 2012, plaintiff had an MRI of his lumbar spine. The report states:

> Degenerative change with some diffuse disc bulges, but no nerve root compression. At L5-S1, the disc bulge is associated with extensive discogenic end plate reactive change. At L1-2, there is a small central midline disc herniation superimposed over the diffuse disc bulge, but there is no nerve root compression.

## Daniel G. DiChristina, M.D.

Orthopedist Daniel G. DiChristina, M.D. first treated plaintiff on November 10, 2003 for low back pain. T.448. Dr. DiChristina noted that a 1996 MRI showed "a right-sided disc herniation at the L5-S1 level." T.448. Dr. DiChristina told plaintiff that he believed "an aggressive approach must now be instituted" and that he "would benefit from a potential epidural steroid injection". T.448. Dr. DiChristina recommended that plaintiff have a new MRI. T.448-49.

Plaintiff returned to Dr. DiChristina on July 9, 2010, again reporting low back pain. T.245. Dr. DiChristina examined plaintiff's low back and found:

> a restriction in flexion. He is capable of flexion to the mid shin with the arms extended. Extension is to neutral with pain. Left and right bending is to 10° in each direction with pain. Straight leg raise is positive on the left at 90° and positive on the right at 45°. Knee extension strength is 4/5. Knee flexion strength is 4/5 bilaterally.

T.246. Dr. DiChristina diagnosed lumbosacral disc herniation and instructed plaintiff to have a

5

new MRI and return in one month. T.246.

On December 7, 2010, plaintiff returned to Dr. DiChristina:

> for follow up of his back, he was evaluated in the past by multiple physicians and has been diagnosed with a central and right paracentral disc protrusion at the L5/S1 level impinging upon the thecal sac. This is to the right. This does match up with his pain of low back pain, right leg pain, and heel numbness. He states that the pain increases with any attempts of motion.

T.240. Dr. DiChristina advised plaintiff that the best treatment option "would be consideration of corticosteroid injection" and that "surgical intervention should be held off until he has attempted the epidural steroid injections." T.240. Dr. DiChristina stated that plaintiff "remains fully disabled at 100% impairment at this time." T.240.

In the new letter from Dr. DiChristina, dated October 11, 2012, he writes:

> Nicholas Rotolo was initially evaluated by myself on the date of November 10, 2003. At that time he complained of significant low back pain. He presented with an injury date of February 1, 1991. The patient also presented with an MRI from 1996, which revealed a right-sided disc herniation at the L5-S1 level. At the time Mr. Rotolo had been attempting to start his own business. He was unable to complete this task, according to his report, due to his persistent back pain and difficulties. He has requested from me documentation of his condition at that time. It is my opinion within a reasonable degree of medical certainty that Mr. Rotolo in all likelihood would develop a disability associated with the disc herniation seen on MRI. He has received additional care, but he has been unable to proceed with employment. He was most recently evaluated by myself on July 30, 2012 and at that time exhibited significant pain secondary to his low back pathology. He was advised to seek care of a pain management specialist . . . .
> At this time, the records and what I am capable of medically documenting is the fact that this man has had a long-standing low back condition and his statement that he is unable to work are within reasonable medical certainty.

### 2012 Medical Source Statement

The last new document, dated November 14, 2012, is a retrospective "Medical Source Statement" from plaintiff's pain management providers, Michele Scott, a nurse practitioner, and Martin Schaeffer, M.D. It addresses plaintiff's condition "on or before December 31, 2008" and

6

refers to an MRI plaintiff had in 2004.[1] Scott and Dr. Schaeffer state that plaintiff had "evidence of nerve root compression", "neuro-anatomic distribution of pain", limited motion of the spine, muscle weakness, sensory or reflex loss and difficulty moving. They opine that on or before December 31, 2008, plaintiff could sit no more than ten minutes and stand no more than fifteen minutes before needing to move and that he could sit, stand and walk less than two hours in an eight-hour workday. Scott and Dr. Schaeffer state that plaintiff could lift ten pounds or less "rarely", never twist, stoop, crouch, or climb ladders but could "rarely" climb stairs. They state plaintiff's limitations would cause him to be "off task" more than twenty percent of the time during an eight-hour workday and miss more than four days of work per month. Additionally, Scott and Dr. Schaeffer indicate that plaintiff had "poor vision", was "unable to tolerate fumes/gases,[2] had hearing loss, heat and cold intolerance as a result of his hypothyroidism, had dry mouth and tooth decay as a result of the radiation he had for head and neck therapy, and depression.[3]

---

[1]The 2004 MRI report states, in relevant part:

There is a 5 mm retrolisthesis of L5 on S1 with a small, broad based right central herniation of the disc annulus at this level, mildly impinging upon the right lateral recess and most likely mildly displacing the descending rightward nerve roots at this level.

There is a 5 mm focus of hypertense signal, consistent with an annular tear with slight disc herniation in the leftward aspect of the L4-5 disc annulus, protruding into the left neural foramina. This neural foramina is also narrowed by mild hypertrophic change to the facet joints at this level, which is also present towards the right.

T.344.

[2]Plaintiff was poisoned by welding fumes in 1989. T.38-29

[3]In 2004, plaintiff was diagnosed with left tonsillar squamous cell carcinoma. T. 425. He received radiation treatment and, according to the record, there has been no recurrence of this

7

All three documents are new and not cumulative of the evidence already in the record. Indeed, as the ALJ acknowledged, there are no medical source statements or opinions regarding plaintiff's residual functional capacity in the record. T.12. The Commissioner argues that the documents are not material because there is "no reasonable possibility that they would have influenced the Commissioner to decide Plaintiff's application differently." Dkt. No.21, p.23. The Commissioner's principal objection to the new evidence is that it conflicts with the other medical evidence in the record from the time period at issue. That is, however, an issue for the Commissioner to resolve on remand. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

The materiality of these records is highlighted by the fact that the ALJ did not attempt to develop the record in this case by obtaining a consultative opinion or even a retrospective opinion from one of plaintiff's treating physicians regarding his functional capacity. An ALJ "has an obligation to develop the record ... regardless of whether the claimant is represented by counsel ." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "A treating physician's retrospective medical assessment of a patient may be probative when based upon clinically acceptable diagnostic techniques." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The absence of any medical evidence regarding plaintiff's work-related capabilities constitutes a gap in the administrative record and requires this Court to remand this matter for further proceedings. *See Toribio v. Astrue*, 06–CV–6532, 2009 WL 2366766, at *8 (E.D.N.Y. Jul. 31, 2009) ("Gaps in the administrative record warrant remand for further development of the record."). "[I]f the record evidence is

---

cancer. T.35. The radiation, however, "destroyed" his thyroid. T.35. Plaintiff takes Synthroid for his thyroid condition. T.39.

inadequate to determine whether an individual is disabled, the ALJ must re-contact the claimant's medical source to gather additional information." *Hilsdorf v. Comm'r of Social Sec.*, 724 F.Supp.2d 330, 344 (E.D.N.Y. 2010) (citing 20 C.F.R. § 404.1512(e)). The ALJ "may do this by requesting copies of [the claimant's] medical source's records, a new report, or a more detailed report from [the] medical source." 20 C.F.R. § 404.1512(e)(1).

With respect to Dr. DiChristina's statement, the ALJ may wish to re-contact him to obtain a more detailed retrospective statement regarding plaintiff's functional abilities since he has treated plaintiff, albeit sporadically, since 2003. A retrospective statement from Dr. DiChristina may shed light on whether, as plaintiff alleged, his back condition progressively worsened and whether, as plaintiff alleged, the disability onset date was earlier than the date contained in his application. Further, the Court notes that the statement by Scott and Dr. Schaeffer supports plaintiff's testimony regarding his symptoms and on remand, the ALJ may wish to obtain the reports documenting their treatment relationship with plaintiff. The Court leaves it within the discretion of the ALJ to determine on remand whether to obtain a consultative examination or otherwise develop the record regarding plaintiff's impairment and the establishment of the relevant time period.

## CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 16, 17, 27) is

**GRANTED**; and it is further

**ORDERED** that the Commissioner's decision is reversed and this matter is remanded for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment for the plaintiff and **Close this Case**.

**IT IS SO ORDERED.**

Date:   June 9, 2014

Norman A. Mordue
Senior U.S. District Judge